UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| VICKI S. REEVES, | ) | CASE NO. C11-5321-MJP-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY DISABILITY |
| MICHAEL J. ASTRUE, Commissioner | ) | APPEAL |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Vicki S. Reeves proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REVERSED AND REMANDED for further administrative proceedings.

/ / /

/ / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

# FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1955.[1] She finished sixth grade and previously worked as a housekeeper (AR 38, 106-07). Plaintiff filed an application for DIB and SSI on April 12, 2007 alleging disability beginning December 31, 1976. Her application was denied at the initial level and on reconsideration, and she timely requested a hearing. At the hearing, plaintiff amended her disability onset date to April 12, 2007. Because the amended date was after her date last insured, she concedes that she is ineligible for DIB. (AR 1, 36; Plaintiff's Opening Brief at p. 1 n.1).

Plaintiff contends that she has been unable to work since April 12, 2007 due to the following conditions: anxiety, depression, borderline personality disorder, obsessive compulsive disorder, manic depression, bacterial infection of the lungs, menopause, and muscle spasms. (AR 21, 126). She alleges that she is unable to work because, due to her conditions, "she has a hard time working with others; she has an attitude and is unable to keep her mouth shut; she is unable to control her emotions on the job and becomes violent with coworkers; she feels homicidal; she has trouble with her hands due to seizures; her shoulder seizes up; she has degenerative disc disease in her back; osteoarthritis in her hands; and, her ability to be physically active is limited." (AR 21).

ALJ Riley Atkins held a hearing on January 7, 2010, taking testimony from plaintiff and vocational expert (VE) Paul K. Morrison. On May 27, 2010, the ALJ issued a decision finding

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

plaintiff not disabled. (AR 16-26.)

Plaintiff timely appealed. On February 18, 2011, the Appeals Council denied plaintiff's request for review (AR 1-4), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged amended onset date.

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found that the plaintiff has the following severe impairments: (1) bipolar disorder type II; (2) intermittent explosive disorder; (3) polysubstance dependence (sustained full remission); (4) history of shoulder/neck pain; and (5) chronic obstructive pulmonary disease. (AR 18). At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ assessed plaintiff as able to perform sedentary work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except that she "should avoid concentrated exposure to environmental irritants; she is limited to simple routine

repetitive work; she is limited to no public contact; and, she generally works best alone and not as part of a team." (AR 20). With that assessment, the ALJ concluded plaintiff could not perform any past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Considering the claimant's age, education, work experience, RFC, and VE testimony, the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff could perform, such as paper sorter and paper sorter/recycler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff asserts that the ALJ failed to properly evaluate the medical evidence, improperly found that plaintiff was not credible regarding the extent of her pain and limitations, erred in finding that plaintiff did not meet or equal a Listing, improperly assessed her RFC, and based his step five finding on an incorrect RFC. In addition, she claims that the Commissioner erred by failing to remand her claim based on the new evidence she submitted to the Appeals

01 Council. Plaintiff requests remand for further administrative proceedings. The
02 Commissioner argues that the ALJ's decision is supported by substantial evidence and should
03 be affirmed.

Medical Evidence

Plaintiff contends that the ALJ failed to properly evaluate the medical evidence in several ways. First, plaintiff argues that the ALJ failed to address the opinion of Jamie Carter, Ph.D, a clinical psychologist who opined in 2003 that plaintiff had marked limitations in some areas. (AR 300-03). In that opinion, however, Dr. Carter estimated that the limitations would exist for a maximum of twelve months. Because Dr. Carter's opinion relates to a period of time years before plaintiff's alleged onset date, the ALJ did not err in not specifically addressing it.

Second, plaintiff notes that the ALJ's decision is devoid of any reference to the opinion of treating physician Richard Shuey. Although an ALJ is not required to address all medical evidence in the record, an ALJ errs when he or she "completely ignores or neglects to mention a treating physician's medical opinion that is relevant to the medical evidence being discussed." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). The Commissioner argues that Dr. Shuey's opinion was "consistent with both the ALJ's listing of Plaintiff's severe impairments and the residual functional capacity analysis." (Commissioner's Brief at p. 11). The record does not support that assertion. In fact, Dr. Shuey, a psychiatrist, diagnosed plaintiff in May 2008 with "major depressive disorder, recurrent, severe." (AR 407). The ALJ neither discussed that finding nor included depression in the list of plaintiff's severe impairments. Moreover, Dr. Shuey's finding regarding plaintiff's depression was consistent with other

evidence in the record that the ALJ failed to address. (AR 406; treating physician Patricia Gardner increased plaintiff's Zoloft in December 2008 "because her depressive symptoms are rather prominent."). Therefore, Dr. Shuey's findings were relevant and the ALJ erred by ignoring them.

Third, plaintiff contends that the ALJ erred by discounting the low Global Assessment of Functioning (GAF) scores her treatment providers assigned. The ALJ noted,

> The notes from Columbia River Mental Health Services indicate her GAF score varied significantly throughout her treatment. In February 2008, it was noted to be 35, and in May 2008, it increased to 50 after just a few months of treatment, but periodically cycled up and down throughout her treatment. However, a GAF score is only a snapshot of an individual's condition at a given time, and the numerical value should be considered in combination with the narrative report and the medical evidence. (AR 22).

In dismissing plaintiff's low GAF scores as a "snapshot" and part of a periodic cycle, the ALJ apparently failed to consider that all of plaintiff's treating sources, including her treating psychiatrist and several treating therapists, listed her GAF at 50 or lower.[2] (AR 229, 311, 394, 396, 398, 407). The scores were consistent with the treaters' other findings. (*Id.*). Therefore, the ALJ erred in failing to adequately consider the low GAF scores assigned by plaintiff's treating sources when evaluating the seriousness of her conditions and resulting limitations.

Fourth, plaintiff contends that the ALJ erred by stating, "The medical record does not support the claimant's alleged mental impairments." (AR 22). That broad statement appears to reflect poor drafting rather than an actual finding because in his opinion, the ALJ found that

---

2 A GAF of 31-40 indicates some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, thinking or mood. A GAF of 41-50 indicates serious symptoms OR any serious impairment in social, occupational, or school functioning.

plaintiff suffers from severe mental impairments and from resulting limitations. (AR 18-20). Reading the decision as a whole demonstrates that the ALJ concluded that plaintiff's mental impairments exist but are not as limiting as alleged. Plaintiff assigns error to that finding. In evaluating the limitations resulting from plaintiff's mental impairments, the ALJ primarily relied on two sources: (1) a report from Todd Bowerly, Ph.D, who conducted a psychological evaluation of plaintiff on July 2, 2007, and (2) a residual functional capacity assessment completed by Kristin Harrison, Psy.D, a state agency consultant. Dr. Bowerly opined that plaintiff had a GAF score of 60. (AR 23). Dr. Harrison opined that plaintiff "can understand, remember, and complete simple and some more complex tasks; she should not work with the public, but she can work in an environment with limited coworker contact." (*Id.*). Dr. Bowerly's and Dr. Harrison's opinions are inconsistent with the opinions of Dr. Shuey and plaintiff's treating therapists and with the GAF scores they assigned. Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating his conclusions, the ALJ "must set forth his own interpretations and explain why they, rather that the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

The ALJ explained that he gave "Dr. Harrison's opinion great weight because it is in

accordance with the medical evidence as a whole, and the claimant's own testimony concerning her abilities." (AR 23). That conclusory, and incorrect, statement is insufficient to meet the ALJ's burden. *Reddick*, 157 F.3d at 725. In fact, Dr. Harrison's opinion is inconsistent with plaintiff's testimony, in which she explained that she was frequently unable to leave her house due to anxiety and depression. (AR 51). The ALJ also failed to consider the fact that Dr. Harrison, who reviewed the record in July 2007, necessarily did not consider any of the later medical records.

Similarly, the ALJ stated that Dr. Bowerly "noted that the claimant's cognitive condition is stable and is not expected to change over time." (AR 23). However, plaintiff is not contending that her cognitive skills are limited. Rather, she claims limitations in social and emotional functioning. In that vein, the ALJ failed to address Dr. Bowerly's opinion that plaintiff has "limited social interaction and adaptive skills secondary to mood-related problems and personality-based difficulties." (AR 245). The ALJ's selective parsing of the record is not a legitimate reason to credit Dr. Bowerly's opinion over that of plaintiff's treating sources. *See, e.g.*, *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (explaining that although the ALJ is not required to discuss every piece of evidence in the record, he may not "selectively analyze" the record).

Finally, plaintiff argues that in evaluating the extent of the limitations caused by her mental impairments, the ALJ focused only on her limitations in relating to the public and to coworkers. On remand, the ALJ should also consider the evidence regarding the other limitations resulting from plaintiff's mental impairments, including Dr. Bowerly's opinion, the GAF scores, and plaintiff's statements regarding her occasional inability to leave the house.

(AR 48, 51, 245, 381, 407, 412).

For all of those reasons, the ALJ erred in his evaluation of the medical evidence. On remand, the ALJ should reassess plaintiff's mental impairments, taking into consideration all of the issues raised and discussed above.

<u>Plaintiff's Credibility</u>

Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Instead, where there is no affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (internal quotation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* In this case, the Commissioner does not dispute that the clear and convincing standard applies.

As set forth above, the ALJ discounted plaintiff's contention that she was disabled due to her mental impairments in part because her allegations were inconsistent with the medical evidence. Because the ALJ erred in his evaluation of the psychiatric evidence, he must also reevaluate the findings regarding plaintiff's credibility in that area.

Regarding plaintiff's physical impairments, the ALJ concluded, "The objective medical evidence is fully consistent with the above residual functional capacity and is inconsistent with the claimant's allegations of disabling levels of pain due to her physical impairments." Plaintiff argues that the ALJ failed to consider "the medical evidence which supports Reeve's

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

allegations of back pain and postural and manipulative limitations." (Plaintiff's Opening Brief at p. 13). The reference to "manipulative limitations" presumably relates to plaintiff's allegation during the hearing that she has "a lot of problems with the left" hand and trouble gripping things because she broke three fingers in that hand. (AR 37). However, two physicians reviewed x-rays of plaintiff's hands, one in May 2003 and the other in September 2007, and neither found evidence of fractures. Although those physicians noted "mild" swelling and "early osteoarthritic changes," the ALJ did not err in concluding the evidence did not support the significant limitations plaintiff alleged. (AR 189, 270). In addition, the ALJ noted that in August 2007, Dr. Kim Webster examined plaintiff, found no manipulative limitations, and found that plaintiff's grasping ability was "completely intact." (AR 22, 266); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). The ALJ provided clear and convincing reasons for finding that plaintiff was not credible regarding the extent of her hand limitations.

Plaintiff also contends that the ALJ erred in finding that she was not credible regarding the extent of her back/neck pain and spasms. Plaintiff argues that the medical evidence supports her allegations of disabling pain. In 2003, Dr. Bruce Bell examined plaintiff, who complained of persistent "discomfort in her neck, mid and low back area," and persistent muscle spasms along her spine. (AR 308). Upon examination, Dr. Bell found spasms in plaintiff's neck or back. (AR 309). He diagnosed her with myofascial pain syndrome, with no evidence of herniated disk or radiculopathy, and impulsive behavior disorder. (AR 310).

In the recommendations portion of his report, Dr. Bell wrote, "I told the patient the most striking thing as far as I see is the muscle spasm. I do not think that is going to change, and it is pretty much the same as what I saw back in 1999. She needs to be careful with lifting, twisting, and bending. She probably should do sedentary work if it is available." (*Id.*). On a form, he checked the box marked "No" in response to the question, "Is treatment likely to restore the person's ability to perform at least half-time in a normal day to day work setting?" (AR 307). The ALJ gave Dr. Bell's opinion little weight because his evaluation was conducted several years prior to plaintiff's alleged onset date and prior to Dr. Webster's consultative evaluation, performed in 2007. (AR 22). Dr. Webster found "muscle tightness with a normal musculoskeletal exam" and opined that plaintiff could walk, stand and sit without restriction in an 8-hour workday. (AR 269). Both the remoteness of time and the more recent, contradictory opinion of Dr. Webster were specific and legitimate reasons to discount Dr. Bell's opinion. The ALJ also noted that in 2007, Dr. Threlkeld found degenerative joint disease of the cervical spine, normal prevertebral soft tissues, and a "gentle left vertex lumbar scoliosis." (AR 21, 270-73). Moreover, the ALJ noted that plaintiff's course of treatment and use of medication were not consistent with disabling levels of pain. (AR 23). Plaintiff had not received surgery or aggressive treatment for the conditions. (AR *Id.*). Plaintiff does not dispute that she has not sought treatment for her back or hand pain during the relevant time period. No physician had prescribed pain relievers for her neck or back. Further, despite plaintiff's allegation of postural limitations, Dr. Webster found none. (AR 22, 266-69). Similarly, Dr. Michael Sherrill, who examined plaintiff in September 2007, opined that plaintiff had no postural limitations. (AR 275-79).

The ALJ also noted that plaintiff's activities of daily living, including preparing her own meals, performing household chores, and shopping for groceries, were inconsistent with her allegations of disabling pain. (AR 24). The ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping" is a clear and convincing reason to discount plaintiff's testimony, as is "an extremely poor work history."[3] *Thomas*, 278 F.3d at 959. Therefore, the ALJ provided clear and convincing reasons for discounting plaintiff's credibility regarding the extent of her pain and limitations caused by her neck and back conditions.

During the hearing, plaintiff affirmed that she has "trouble" with chronic obstructive pulmonary disease (COPD), which causes her to become "winded" when performing housework. (AR 46). Although plaintiff argues that the ALJ rejected her testimony, he found that the COPD was a severe impairment. However, he did not find that the COPD results in work related limitations, and plaintiff does not contend otherwise. Finally, the ALJ properly determined that plaintiff's continued smoking undermined her credibility regarding the limitations from her respiratory condition. *Bray v. Commissioner*, 554 F.3d 1219, 1227 (9th Cir. 2009). Accordingly, the ALJ provided clear and convincing reasons for finding that plaintiff's COPD was not as limiting as she alleged.

## Appeals Council Evidence

In support of her appeal, plaintiff provided the Appeals Council with two new pieces of evidence from Columbia River Mental Health Services: (1) an April 20, 2010 letter written by

---

[3] Reeves claims to have been disabled since 2007, so she is not alleging a medical inability to work prior to that time.

Pam Hilberg, a therapist, who wrote that plaintiff's "mental health symptoms will make it impossible to ever work at a job. She suffers with lack of motivation, lack of interest, uncontrollable anger outbursts, severe problems getting out of the house, no education beyond 6th grade, and inability to work with the public" (AR 412); and (2) a letter dated October 21, 2010 from Bobbi Barlow, LMHCA, who noted that plaintiff was receiving treatment and urged consideration of her mental health condition in determining whether plaintiff was able to work (AR 413).

Plaintiff contends that the Appeals Council erred by declining her request for review based on the new evidence. In doing so, the Appeals Council stated that the opinion from Ms. Hilberg was not material because it was "well after the [ALJ's] decision." (AR 2). In fact, the letter was written only three months after the decision. The Appeals Council apparently did not consider whether the evidence "relates to the period on or before" the ALJ's decision as required. 20 C.F.R. § 404.976(b)(1). Therefore, the Commissioner erred. Although the court could consider the new evidence, it directs the ALJ to do so on remand because this case is being remanded for other reasons.

In sum, on remand, the ALJ must reassess the medical evidence regarding plaintiff's psychiatric impairments, reevaluate plaintiff's credibility in light of the properly credited medical evidence, and reassess the combined effect of all of plaintiff's impairments. During the reassessment process, the ALJ should also assess the newly submitted evidence to the Appeals Council. Because the errors set forth above will require a reevaluation of the medical evidence, plaintiff's credibility, and her RFC, the court will not address plaintiff's contention that the Commissioner failed to meet his burden at step five of showing that she can perform

other work in the national economy. Rather, the ALJ should reconsider steps four and five of the sequential evaluation process as necessary on remand.

## **CONCLUSION**

For the reason set forth above, this matter should be REMANDED for further administrative proceedings.

DATED this <u>6th</u> day of March, 2012.

Mary Alice Theiler
United States Magistrate Judge